UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

CHRISTOPHER BOEGEMAN

Petitioner,

v.

CHRIS SMITH, et al.

Respondent.

Case No.: 3:17-cv-00861-GPC-KSC

**ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION DENYING PETITION FOR WRIT OF HABEAS CORPUS**

On April 27, 2017, Petitioner Christopher Boegeman ("Petitioner"), filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Dkt. No. 1. He challenges his conviction for grand theft in San Diego Superior Court, arguing that errors in jury instructions violated his right to due process. *Id.* at 6-7. On August 7, 2017, Respondent filed an Answer, Memorandum of Points and Authorities in Support of the Answer, and Lodgments. Dkt. Nos. 6-7. Petitioner did not file a traverse. On March 26, 2018, Magistrate Judge Crawford issued a Report and Recommendation ("Report") advising that this Court deny the petition. Dkt. No. 8. On April 27, 2018, Petitioner filed objections to the Report and Recommendation. Dkt. No. 9.

After a thorough review of the documents presented, trial record, and applicable law, this Court **ADOPTS** the Magistrate Judge's Report and Recommendation,

1

**OVERRULES** Petitioner's objections, **DENIES** the petition for a writ of habeas corpus, and **DENIES** a certificate of appealability.

## I.     BACKGROUND

### A.     FACTUAL BACKGROUND[1]

Petitioner and his roommate David Schroeder shared an apartment in Escondido, California.  Lodgment No. 1, Dkt. No. 7-1 at 1.  Their neighbor, Douglas Goll ("Neighbor"), occasionally bought and sold items for them on eBay.  *Id.*  In April of 2014, Petitioner and Schroeder approached the neighbor to discuss buying and selling silver online.  *Id.*  Petitioner told the neighbor that if he did not sign for a package when it was delivered, he could claim he never received it and get a refund or free replacement.  *Id.*  Schroeder said that he always claimed packages were stolen from his apartment.  *Id.*  Petitioner said he once signed his name as Mickey Mouse.  *Id.*

Petitioner and Schroeder then asked the neighbor to bid on a set of silver on eBay.  *Id.*  The neighbor purchased the silver for $3,850 with Petitioner's credit card, which Schroeder gave to him.  *Id.*  EBay initially accepted the card, but later cancelled the transaction.  *Id.*  Sometime later, Schroeder called Dean Gannon ("Victim") about a set of silver flatware Gannon was selling on eBay.  *Id.*  After an extensive conversation, the victim agreed to sell the silver to Schroeder and ship it to him.  *Id.*  Schroeder paid for the silver with a Visa credit card number.  *Id.*  The charge was accepted, and the victim shipped the silver to Petitioner and Schroeder's apartment.  *Id.* at 1-2.  The victim also purchased insurance that would reimburse him up to $1,000 plus the cost of shipping if the shipment were lost or damaged.  *Id.* at 2.

On Saturday, April 26, 2014, FedEx delivery person Steven Milner ("FedEx Delivery Person" or "Delivery Person") delivered the silver to Petitioner and Schroeder's

---

[1] In habeas proceedings for state prisoners, federal courts give deference to state court findings of fact. *See* 28 U.S.C. § 2254(e)(1).

apartment.  *Id.*  When the delivery person knocked on the door, Petitioner opened it, identified himself as Schroeder, and signed for the package.  *Id.*  Because Petitioner gave the full name of the person on the package and was at the specified delivery address, the FedEx delivery person did not ask for identification.  *Id.*  He did testify that he noticed another man in the apartment "just sitting there in the background."  *Id.*  He also testified that he had a brief conversation with Petitioner in which he complained about having to work on a Saturday, and Petitioner responded, "at least you have a job."  *Id.*  He also claimed he had seen Petitioner on prior occasions when he made deliveries, but that he had never spoken with him before.  *Id.*

On Monday, April 28, 2014, Schroeder called FedEx to report that the silver he had ordered from the victim had not been delivered.  *Id.* at 3.  He claims FedEx informed him that it was delivered next door, but when he went to check it was not there.  *Id.*  Sometime later, Schroeder called his credit card company and reported that he had not received the silver he had ordered from the victim.  *Id.* at 2.  The company then reversed the charge and withdrew the money that had been paid to the victim.  *Id.*

The victim then contacted Scott Tolstad of the Escondido police department, who called a FedEx investigator.  *Id.*  The investigator put Tolstad in contact with the FedEx delivery person, who remembered making the delivery and said that he could identify the person who signed for the package.  *Id.*  When Tolstad later showed the delivery person a six-pack lineup of DMV photographs—including one photograph of Petitioner and five photographs of men with similar features—the delivery person identified Petitioner as the man who had signed for the package.  *Id.*

At trial, the delivery person testified that a week or two after he delivered the silver to Petitioner, he made another delivery to the same address, but it "was a totally different name."  The first two times he attempted to make the delivery, there was a note on the door instructing him to "take it somewhere else."  *Id.*  The delivery person did not feel comfortable taking it somewhere else, and attempted to deliver the package to Petitioner

and Schroeder's address a third time. *Id.* This time, the man he had seen sitting in the background of the apartment on April 26 opened the door, and the delivery person asked to see identification. *Id.* At that point, "the other gentleman came up and was angry that [the delivery person] wouldn't let him sign for it." *Id.* Both men refused to show identification and one of them eventually closed the door because the delivery person refused to release the package. *Id.*

Petitioner, on the other hand, testified that he first encountered the delivery person a couple months before April 26, and had three other encounters with him before that weekend. *Id.* He claims that in the first encounter, he asked the delivery person to leave his packages at the rental office for the apartment complex and to stop leaving them at his door. *Id.* The delivery person responded that it was "none of [Petitioner's] effing business to tell him how to do his job." *Id.* Petitioner claims that the second encounter was a "screaming match" and that he told the delivery person he was "really tired of his packages coming up missing and seeing these signs saying that [the delivery person] delivered something when it was never there." *Id.* The delivery person responded that delivering packages to the rental office was not his job, and that his job was "to throw it there and keep going. He doesn't care." *Id.* On the third encounter, Petitioner claims that he complained to the delivery person about a package that never showed up. *Id.* The delivery person said that he had left the package and that Petitioner was ignorant. *Id.* Petitioner called FedEx corporate and discussed the matter with them. *Id.* He testified that he and Schroeder had lost about $10,000 worth of missing items as a result of FedEx misplacing their packages. *Id.*

Petitioner also presented an alibi that he and Schroeder left to Los Angeles on Friday, April 25, 2014, and did not return until Sunday, April 27, 2014. *Id.* He claims they spent the weekend helping their friend Tanya Williams-Mahee buy merchandise to sell at swap meets. *Id.* Williams-Mahee corroborated their story. *Id.* at 3. However, the prosecution called an expert on cellphone records and technology. *Id.* The investigator

explained that the cellphone company always knows where a phone is being used because cellphones always send and receive signals from cellphone towers. *Id.* He testified that all of the phone calls coming from Petitioner's phone that weekend connected to cellphone towers in Escondido and Temecula, not Los Angeles. *Id.* In surrebuttal, Petitioner claimed that weekend he left his phone with a neighbor who needed it to call her son. *Id.*

### B.    PROCEDURAL BACKGROUND

On March 11, 2015, the San Diego District Attorney's office filed a complaint charging Petitioner with one count of grand theft of personal property. Lodgment No. 8, Dkt. No. 7-14 at 7-9. On June 2, 2015, a jury found Petitioner guilty, *id.* at 93, and the trial court placed him on three years of formal probation,[2] including 180 days in Sheriff's custody, *id.* at 107.

On February 15, 2016, Petitioner appealed his conviction to the Court of Appeal of California, Fourth Appellate District. Lodgment No. 2, Dkt. No. 7-2. He argued the trial court: (1) violated his Fourteenth Amendment Right to due process and Sixth Amendment Right to a jury trial by instructing the jury that they could convict him on an aiding and abetting theory of liability without defining the elements of aiding and abetting; (2) violated his Fourteenth Amendment Right to Due Process by instructing the jury on a theory of theft by larceny that was legally invalid because the victim neither possessed nor owned the property when Petitioner took it; and (3) prejudicially erred by

---

[2] Although Petitioner has been released from incarceration, this Court retains jurisdiction over his habeas petition because Petitioner was on probation at the time this petition was filed, which constitutes "custody" for purposes of habeas jurisdiction. *See Bailey v. Hill*, 599 F.3d 976, 979 (9th Cir. 2010) ("The petitioner must be in custody at the time that the petition is filed, but the petitioner's subsequent release from custody does not deprive the federal habeas court of its statutory jurisdiction.") (internal citations and quotation marks omitted); *Chaker v. Crogan*, 428 F.3d 1215, 1219 (9th Cir. 2005) ("Furthermore, a petitioner is 'in custody' for the purposes of habeas jurisdiction while he remains on probation."); *Sibron v. New York*, 392 U.S. 40, 51 (1968) (holding that when further penalties or "collateral consequences" can be imposed as a result of a conviction, a case is not moot despite a prisoner's release from custody).

admitting hearsay evidence that went to the credibility of one of the government's witnesses. *Id.* at 25, 37.

On September 29, 2016, the Court of Appeal affirmed the trial court's decision. Lodgment No. 1, Dkt. No. 7-1. The court concluded that: (1) the failure to instruct on aiding and abetting was harmless because there was no evidence that Petitioner was ignorant of the plan to steal the silver; (2) although the theft by larceny theory was factually invalid, it was harmless because there was no evidence that the jury found him guilty solely on the theft by larceny theory; and (3) the trial court acted within its discretion by properly admitting hearsay evidence under the business records exception to the hearsay rule. *Id.* at 4-8.

On November 7, 2016, Petitioner filed a petition for review in the California Supreme Court, arguing that: (1) theft by larceny was a legally invalid theory; and (2) the trial court erred by instructing the jury on an aiding and abetting theory of liability without defining the elements of aiding and abetting. Lodgment No. 5, Dkt. No. 7-5 at 20, 29. On December 21, 2016, the California Supreme Court summarily denied the petition. Lodgment No. 6, Dkt. No. 7-6.

On April 27, 2017, pursuant to 28 U.S.C. § 2254, Petitioner filed a petition for a writ of habeas corpus in this Court on the grounds that: (1) theft by larceny was a legally invalid theory that violated his Fourteenth Amendment right to due process; and (2) the aiding and abetting jury instructions violated his Fourteenth Amendment right to due process and his Sixth Amendment right to a jury trial. Dkt. No. 1 at 6-7.

On March 26, 2018, Magistrate Judge Crawford issued a Report and Recommendation recommending that this Court deny the petition for a writ of habeas corpus. Dkt. No. 8. She found that although the state court's harmlessness decision about the aiding and abetting instruction may have been incorrect, it was not objectively unreasonable for the Court of Appeal to have found harmless error. *Id.* at 23. She also agreed with the Court of Appeals' conclusion that the factually invalid theft by larceny

theory was harmless because the evidence clearly supported that Petitioner was guilty of theft by false pretenses. *Id.* at 18. On April 27, 2018, Petitioner, proceeding *pro se*, filed objections to the Report and Recommendation. Dkt. No. 9.

## II.    STANDARD OF REVIEW

### A.    Review of Magistrate Judge's Report and Recommendation

District Court judges must review *de novo* any part of a magistrate judge's report and recommendation that has been objected to. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The court may "accept, reject, or modify" the recommendation in whole or in part, receive more evidence, or return it to the magistrate judge with instructions. *Id. De novo* review is only required when an objection is made to the report and recommendation. *Wang v. Masaitis,* 416 F.3d 992, 1000 n.13 (9th Cir. 2005); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121-22 (9th Cir. 2003) (*en banc*).

### B.    Review of Habeas Petition

This petition is governed by the rules set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 322 (1997). Under AEDPA, a federal court may not grant a habeas petition with respect to any claim that was adjudicated on the merits in state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. §§ 2254(d)(1)-(d)(2). Clearly established federal law refers to the governing legal principles set forth by the Supreme Court at the time the decision was rendered. *Lockyer v. Andrade*, 538 U.S. 67, 71-72 (2003).

The court may grant relief under the "contrary to" clause if the state court: (1) applied a rule that contradicts governing law set forth by the Supreme Court; or (2) decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003); *Williams v. Taylor*, 529 U.S. 362, 405

(2000).  The court may grant relief under the "unreasonable application" clause if the state court correctly identified the legal principle but incorrectly applied it to the facts of the case.  *Williams*, 529 U.S. at 407.  The focus in the unreasonable application approach is not whether the application was merely incorrect, but whether it was objectively unreasonable.  *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003); *See Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (holding that a federal habeas court may not issue a writ of habeas corpus simply because it concludes the state court applied the law incorrectly).  If fair-minded jurists could disagree as to whether the decision was reasonable, it is not objectively unreasonable, and this Court cannot grant relief.  *Harrington v. Richter*, 562 U.S. 86, 87-88 (2011).

Federal habeas courts base their reasoning on the analysis of the highest state court to furnish an explanation for its judgment.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 805-06 (1991).  When the state's highest court does not provide a reasoning for its judgment, the federal court "looks through" the unreasoned judgment to the last reasoned state court decision.  *Id.*

## III.   DISCUSSION

Petitioner contends that he is entitled to relief because the jury was improperly instructed in two ways.  *See* Dkt. No. 1 at 6-7.  First, he argues that the trial court erred by instructing the jury they could convict him on an aiding and abetting theory of liability without defining the requirements of aiding and abetting.  *Id.* at 7.  He argues this violated his due process rights because the jury could have convicted him without finding the necessary intent.  *Id.* at 41-48.  Second, he argues that the trial court violated his due process rights by instructing the jury that they could convict him of theft by larceny, which was a legally invalid theory.  *Id.* at 6.  He claims the facts did not support a conviction under theft by larceny.  *Id.* at 32-40.

8

### A.    Failure to Instruct on Aiding and Abetting

Petitioner contends the trial court violated his due process rights by instructing the jury they could find him guilty of grand theft as an aider and abettor without defining the requirements of aiding and abetting.  Dkt. No. 1 at 7.  Respondent contends that failure to properly instruct on the requirements of aiding and abetting does not state a constitutional claim and that the state's resolution of the issue is not contrary to or an unreasonable application of federal law.  Dkt. No. 6-1 at 12-18.

Here, the trial court instructed the jury regarding Boegeman's alibi defense with a modified version of California Instruction No. 3400, which stated:

> The People must prove the defendant committed grand theft in violation of Penal Code section 487(a) as charged in Count 1. The defendant contends he did not commit this crime and he was somewhere else when the crime was committed. The People must prove the defendant was present and committed the crime with which he is charged.  The defendant does not need to prove he was elsewhere at the time of the crime.
>
> If you have a reasonable doubt about whether the defendant was present when the crime was committed, you must find him not guilty.
>
> However, the defendant may also be guilty of grand theft in violation of Penal Code section 487 [](a) as charged in Count 1 if he aided and abetted or conspired with someone else to commit that crime.  If you conclude that the defendant aided and abetted or conspired to commit grand theft, then he is guilty even if he was not present when the crimes were committed.

Lodgment No. 1, Dkt. No. 7-1 at 3-4 (emphasis added).

In his objection, Petitioner argues that for aiding and abetting, the jury should have had to consider: (1) intent about false pretenses; (2) that Petitioner received the silverware but claimed [he] didn't; and (3) that Petitioner withdrew the payment even though he received the silverware.  Dkt. No. 9 at 2.  However,

these are the overt acts of conspiracy, on which the jury was properly instructed.[3] Because Petitioner proceeds *pro se*, this Court must construe his objections liberally. *See Tritz v. U.S. Postal Serv.*, 721 F.3d 1133, 1139 (9th Cir. 2013). This Court assumes Petitioner intended to refer to the elements of aiding and abetting[4] because he characterized them as such. *See* Dkt. No. 9 at 2 ("For a conspiracy of aiding and abetting, I understand the jury should have had to consider three things that The People had to show."). Accordingly, this Court construes Petitioner's objection to object to the aiding and abetting jury instruction.

### 1. Constitutional Violation

The due process clause requires that a criminal conviction be based upon proof beyond a reasonable doubt of every fact necessary to constitute the crime. *In re Winship*, 397 U.S. 358, 364 (1970). Failure to submit an essential element to the jury relieves the defense of its burden to prove every element of the crime beyond a reasonable doubt. *United States v. Perez*, 116 F. 3d 840, 846 (9th Cir. 1997). A defendant's due process rights are "unquestionably implicated" when his purported conviction rests on anything less than a finding of guilt as to all the elements of the crime. *United States v. Alferahin*, 433 F.3d 1148, 1157 (9th Cir. 2006).

Here, there was a constitutional violation because it was possible that the jury could have found Petitioner guilty of aiding and abetting without finding the necessary

---

[3] "The trial court's conspiracy instruction informed the jury that to prove [Petitioner] was guilty of theft as a member of a conspiracy, the People had to prove that [Petitioner] 'intended to and did agree with David Schroeder to commit theft by false pretenses[,]' and that [Petitioner] and Schroeder 'committed at least one of the following overt acts to accomplish theft by false pretenses: (1) Ordered silverware from [the victim] without intent to pay; (2) Received the silverware but claimed never to have received it; (3) Withdrew payment for the silverware despite having received it.'" Lodgment No. 1, Dkt. No. 7-1 at 4 n.4.

[4] The elements of aiding and abetting are: "(1) knowledge of the unlawful purpose of the perpetrator; (2) intention or purpose of committing, encouraging, or facilitating the commission of the offense; and (3) by act or advice aiding, promoting, encouraging, or instigating, the commission of the crime. *People v. Beeman*, 35 Cal. 3d 547, 561 (1984); see CALCRIM No. 401." Lodgment No. 1, Dkt No. 7-1 at 4 n.3.

intent. The aiding and abetting instructions did not instruct the jury that in order to convict Petitioner of aiding and abetting, it needed to find he had the necessary intent. Lodgment No. 1, Dkt. No. 7-1 at 3-4. As a result, the prosecution was relieved of its burden to prove every element of aiding and abetting, depriving the jury of its fact-finding duty which thereby violates a defendant's due process right to have each element found beyond a reasonable doubt. *See Perez*, 116 F. 3d at 840 ("Failure to instruct on every element, is, therefore, constitutional error."). Therefore, it is possible Petitioner was convicted on something less than a finding of guilt on all elements of the crime, and his due process rights are "unquestionably implicated." *See Alferahin*, 433 F.3d at 1157.

### 2. Harmless Error

Recognizing that failure to define the elements of aiding and abetting was a constitutional violation,[5] the state appellate court applied *Chapman* to determine whether the error was "harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24 (1967); *see* Lodgment No. 1, Dkt. No. 7-1 at 4. If there was a reasonable possibility that the trial error complained of might have contributed to the conviction, then the court cannot say the error was harmless beyond a reasonable doubt. *Chapman*, 386 U.S. at 23. While some rights are so basic to a fair trial that they can never be treated as harmless, not all trial errors that violate the Constitution "automatically call for reversal." *Id.* While failing to instruct on the reasonable doubt standard affects all of the jury's findings and is thus subject to automatic reversal, omission of an element of aiding and abetting in jury instructions does not always render a trial completely unfair and is subject to the harmlessness test. *See Neder v. United States*, 527 U.S. 1, 10, 12 (1999).

In applying *Chapman*, the state appellate court found the error was harmless beyond a reasonable doubt because: (1) there was no reasonable probability that the

---

[5] Both the state appellate court and the magistrate judge acknowledged that the aiding and abetting instruction was a constitutional violation. *See* Lodgment No. 1. Dkt. No. 7-1 at 4. *See also* Dkt. No. 8 at 21.

erroneous aiding and abetting instruction contributed to the verdict; and (2) no reasonable juror properly instructed on the elements of aiding and abetting would have found that Petitioner lacked the necessary intent to be found guilty of aiding and abetting. Lodgment No. 1, Dkt. No. 7-1 at 4. The magistrate judge, on the other hand, indicated that it would likely have found that the error was not harmless beyond a reasonable doubt if it were to have been directly applying *Chapman*. Dkt. No. 8 at 23. She reasoned that because the trial court did not define what aiding and abetting meant in a legal sense, it is possible that the jury may have convicted Petitioner of aiding and abetting without finding the necessary intent. *Id*. She also reasoned that the possibility that the jury convicted Petitioner on an aiding and abetting theory was compounded by the fact that the aiding and abetting instructions were included in the alibi instructions and that the jury sent a note during deliberations asking to have the alibi testimony read back to them. *Id*. This, she argued, served to highlight the aiding and abetting instruction to the jury, rather than render it inapplicable as the state court suggested. *Id*.

This Court agrees with the state appellate court that there was no reasonable probability that the absence of an aiding and abetting instruction contributed to the verdict. The prosecution's theory of the case was conspiracy, and the trial court correctly instructed the jury on necessary mental state and acts to support a finding that Boegeman was guilty of theft by false pretenses as a member of a conspiracy with Schroeder. Lodgment No. 1, Dkt. No. 7-1 at 4. The prosecutor did not argue or even mention aiding and abetting to the jury. *Id*. The parties collectively presented the jury with two possibilities—either Petitioner conspired with Schroeder to steal the silver or he was entirely innocent. Given the singular focus on a conspiracy theory, there was no reasonable probability that a failure to instruct on aiding and abetting contributed to the verdict.

Moreover, based upon the evidence presented to the jury, no reasonable juror properly instructed on the elements of aiding and abetting would have found that

Petitioner did not knowingly aid Schroder's theft of silver by false pretenses. The evidence established that Schroeder ordered silver with a Visa card. Lodgment No. 1, Dkt. No. 7-1 at 1-2. The FedEx delivery person testified that when he delivered the silver to Petitioner's apartment, Petitioner falsely identified himself as Schroeder and signed for the package. *Id.* at 1-2. It is unrebutted that after the delivery of the silver, Schroeder reported the silver as undelivered. The jury also learned that Petitioner had shared with his neighbor the criminal scheme of ordering silver and then falsely claimed that it had not been delivered. *Id.* at 1. The theory of the defense was that Petitioner had an alibi at the time of the delivery in that he was in Los Angeles at the time of the offense and could not have committed the crime given his location. *Id.* at 3-4. There was no evidence to support a finding that Petitioner was ignorant of the plan to steal the silver or that Petitioner did not intend to commit, encourage or facilitate the theft by his actions.

Accordingly, the Court finds that if it were to have applied *Chapman* directly that it would have determined that the failure to define aiding and abetting was harmless beyond a reasonable doubt. *See Chapman*, 386 U.S. at 23.

### 3. Unreasonable Application of Clearly Established Federal Law

Even if this Court found that the failure to define aiding and abetting was not harmless, it nevertheless may not grant relief unless the state appellate court's harmlessness determination itself was objectively unreasonable. *Davis v. Ayala*, 135 S. Ct. 2187, 2199 (2015). Federal habeas relief is precluded as long as "'fair[-]minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Even if a federal habeas court disagrees with a state court determination, it may not grant relief if the state court's decision was not objectively unreasonable. *See Fong Soto v. Ryan*, 760 F.3d 947, 980 (9th Cir. 2014) (citing *Edwards v. Lamarque*, F.3d 1121, 1128-29 (9th Cir. 2007). *See also Harrington*, 562 U.S. at 131 ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state

court's ruling on the claim being presented in federal court was *so lacking in justification* that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.") (emphasis in original).

Here, this Court cannot say the state appellate court's decision finding harmless error was objectively unreasonable. Given the amply supported conclusions that Petitioner conspired to commit grand theft and would have been convicted of aiding and abetting even if the jury had been properly instructed, fair-minded jurists could disagree on the correctness of the state appellate court's harmlessness decision. Accordingly, this Court cannot say that the decision finding harmless error was objectively unreasonable. *See Yarborough*, 541 U.S. at 652.

### 4. Prejudice

Even if the harmlessness decision were objectively unreasonable, habeas petitioners are not entitled to relief unless they can show the error resulted in "actual prejudice," i.e. that it had a "substantial and injurious" effect on the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993). *See also Frye v. Pliler*, 551 U.S. 112, 120 (2007) ("[I]n § 2254 habeas proceedings a [federal] court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht* . . . whether or not the state appellate court recognized the error and reviewed it under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman*."). A federal habeas court must grant relief if it is in "grave doubt" about whether the error resulted in actual prejudice. *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995). The key inquiry in *Brecht* is whether the entire trial process was rendered fundamentally unfair. *See Brecht*, 507 U.S. 619; *see also Murtishaw v. Woodford*, 255 F.3d 926, 971 (2001) (holding that instructional error can form the basis for federal habeas relief only if it is shown that "the ailing instruction by itself so infected the entire trial process that the resulting conviction violates due process."). "The burden of demonstrating that an erroneous instruction was so

prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). The ailing instruction must not be judged in isolation, but considered in the context of the instructions and trial record as a whole. *Estelle v. McGuire,* 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten,* 414 U.S. 141, 147 (1973)). In addition*,* an "*omission*, or an incomplete instruction, *is less likely to be prejudicial* than a misstatement of the law." *Henderson*, 431 U.S. at 155 (emphasis added).

Here, Petitioner has not established that any instructional omission had a substantial or injurious effect on the jury's verdict. *See Brecht*, 507 U.S. at 623. The evidence that Petitioner knew about and participated in the theft of the silver was strong. *See* Lodgment No. 1, Dkt. No. 7-1 at 1-3. Given the strength of the evidence that Petitioner knew about and participated in the theft by false pretenses of the silver flatware, the jury could have found that Petitioner had the necessary intent had they been properly instructed on aiding and abetting. Therefore, given that the jury instructions and trial record as a whole indicate Petitioner could have been convicted regardless of any error in instructions, this Court is not in "grave doubt" about the effects of the aiding and abetting instruction. *See O'Neal*, 513 U.S. at 435.

### B.    Theft by Larceny Theory

Petitioner does not specifically object to the magistrate judge's Report and Recommendation with regard to the theft by larceny theory. *See* Dkt. No. 9. He does argue, however, that "the jury did not receive full instructions that mattered." Dkt. No. 9 at 3. Because Petitioner proceeds *pro se*, his objections must be liberally construed. *See Tritz v. U.S. Postal Serv.*, 721 F.3d 1133, 1139 (9th Cir. 2013). Accordingly, this Court construes the general objection to the lack of "full instructions that mattered" to object to the theft by larceny portion of the Report and Recommendation. In his Petition, Petitioner argued that the jury should not have been instructed on theft by larceny

because, under the facts of the case, he could not have been convicted of theft by larceny. Pet., Dkt. No. 1 at 32-40.  Respondent contends that Petitioner does not state a federal constitutional claim because the error was one of state and not federal law.  Answer, Dkt. No. 6-1 at 12-18.  Respondent also contends that the state court's decision that the error was harmless was reasonable.  *Id.*

### 1. Factual Invalidity

Legally invalid theories incorrectly describe the elements of a crime or burden of proof.  *See Yates v. United States*, 354 U.S. 298 (1957); *Hedgpeth v. Pulido*, 555 U.S. 57 (2008).  *See also People v. Perez*, 35 Cal. 4th 1219, 1233 (2005) (A legally invalid theory is one which "fails to come within the statutory definition of the crime.").  Factually invalid theories are those that are not supported by the evidence presented at trial.  *Griffin v. United States*, 502 U.S. 46, 56 (1991).  *See also People v. Guiton*, 4 Cal. 4th 1116, 1129 (defining factual invalidity in an instruction to be one which as an instructional error that "correctly stat[es] a principle of law," but "has no application to the facts of the case.").  Under clearly established federal law, while it is preferable for a court to remove from the jury's consideration a factually invalid theory of guilt, the refusal to do so does not provide an independent basis for reversing an otherwise valid conviction.  *Griffin v. United States*, 502 U.S. 46, 60 (1991) (explaining that when jurors are presented with a legally inadequate theory, there is no reason to believe their own knowledge and expertise will save them from the error, but when a jury is presented with a factually inadequate theory, the opposite is true because they are "well-equipped" to analyze the evidence).    Further, when a jury returns a guilty verdict on an indictment charging several acts, the verdict stands if the evidence is sufficient with respect to any one of the acts charged.  *Id.* at 56-57 (citing *Turner v. United States*, 396 U.S. 398, 420 (1970)).  Reviewing these principles as established in *Griffin*, the California Supreme Court has held that the failure to remove a factually unsupported theory is not an error that violates the federal Constitution and is an error of state law.  *People v. Guiton*, 4 Cal. 4th 1116,

1130 (1993) (stating that a factually invalid instruction "does not appear to be of federal constitutional dimension"). Federal habeas relief is not available for errors of state law. *Estelle v. McGuire*, 504 U.S. 62, 71-72 (1991).

Here, the theft by larceny theory was factually and not legally invalid. The theft by larceny instruction did not fail to come within the statutory definition of the crime.[6] Rather, it was not supported by the facts at trial. *See* Lodgment No. 1, Dkt. No. 7-1 at 1-3. During closing arguments, the prosecutor specifically told the jury that the theory that was supported by the evidence was theft by false pretenses. *Id.* at 7 ("Thus, the prosecutor essentially admitted . . . that the theory of theft by larceny was factually inadequate."). Moreover, a key difference between the two theories presented—theft by false pretenses and theft by larceny—is that theft by larceny requires a "trespassory taking" while theft by false pretenses involves a consensual transfer of title. *People v. Williams*, 57 Cal. 4th 776, 788 (2013). Put another way, theft by larceny requires that a defendant carry away another person's property without that person's permission, while theft by false pretenses requires that a defendant take possession and title of another's property with that person's permission, and that the permission was gained by false or fraudulent representations.[7] *See id.* Therefore, if theft by false pretenses is completed by

---

[6] The theft by larceny instructions stated that, "To prove that a defendant is guilty of [theft by larceny], the People must prove that, [¶] 1. The defendant took possession of property owned by someone else; [¶] 2. The defendant took [the] property without the owner's or owner's agent's consent; [¶] When the defendant took the property he intended to deprive the owner of it permanently or to remove it from the owner or owner's agent's possession for so extended a period of time that the owner would be deprived of a major portion of the value or enjoyment of the property; [¶] 4. The defendant moved the property, even a small distance, and kept it for any period of time, however brief." Lodgment No. 1; Dkt. No 7-1 at 5.

[7] The theft by false pretenses instructions stated that, "To prove the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant knowingly and intentionally deceived a property owner or the owner's agent by false or fraudulent representation or pretense; [¶] 2. The defendant did not intending to persuade the owner or the owner's agent to let the defendant or another person take possession and ownership of the property; [¶] AND [¶] 3. The owner let the defendant or another person take possession and ownership of the property because the owner or owner's agent relied on the representation or pretense. Lodgment No. 1, Dkt. No. 7-1 at 5.

consensual transfer of title, a defendant cannot then commit theft by larceny by a nonconsensual or trespassory taking. *See People v. Beaver*, 186 Cal. App. 4th 107, 121 (2010) ("The present matter did not involve a taking of property from another without his consent . . . This was theft by false pretenses, not larceny.") Here, under the law governing shipment contracts, title was transferred from the victim to Schroeder when the victim shipped the silver. *See* Cal. Com. Code § 2401(2); Lodgment No. 1, Dkt. No. 7-1 at 6 ("There was no evidence at trial indicating the contract between [the victim] and Schroeder for the purchase of [the] silver was anything other than a standard shipping contract, under which title to the silver passed to Schroeder when the [victim] shipped the silver."). Accordingly, theft by false pretenses was complete when the victim shipped the silver, and the crime could not become theft by larceny when a perpetrator of the theft by false possession later took possession of it. *See Beaver*, 186 Cal. App. 4th at 121. Therefore, theft by larceny was a factually invalid theory and constituted an error of state law. *See Guiton*, 4 Cal. 4th at 1130.

Consequently, the state appellate court's decision that the theft by larceny theory was factually invalid but harmless, was not contrary to or an unreasonable application of clearly established federal law. The decisions that the erroneous instruction was factually invalid and that the error was harmless were both consistent with *Griffin*. *See Griffin*, 502 U.S. at 56. The larceny instruction did not incorrectly state the elements of the crime or the burden of proof. *See* Lodgment No. 1, Dkt. No. 7-1 at 7. Rather, the facts presented at trial did not support a conviction for larceny because the victim consensually transferred the title to the silver under false pretenses. *See Beaver*, 186 Cal. App. 4th at 121. The victim testified that he and Schroeder had an extensive conversation about the silver, Schroeder paid for the silver, and the victim shipped it to him. Lodgment No. 1, Dkt. No. 7-1 at 1-2. Further, there is no affirmative indication in the record that the conviction was based solely on the theft by larceny instruction. *See id.* at 1-3. The neighbor testified that Petitioner told him he could not sign for a package, claim it was

lost, and get a refund or replacement product. *Id.* at 1. The victim claimed he had an extensive conversation with Schroeder about the silver flatware. *Id.* They agreed upon a price, the victim successfully charged a credit card Schroeder gave him, and sent the flatware via FedEx to Schroeder. *Id.* at 1-2. The FedEx delivery person identified Petitioner as the one who signed for the package, and cellphone evidence placed Petitioner in the San Diego area on the weekend the package was delivered. *Id.* at 2-3. Accordingly, there was sufficient evidence to demonstrate that Petitioner was convicted on the theft by false pretenses theory and not on the theft by larceny theory.

Because the instructions were factually and not legally invalid, the error was one of state law only, and federal habeas relief is not available for errors of state law. *Guiton*, 4 Cal. 4th at 1130 (factual invalidity is an error of state law); *Estelle*, 502 U.S. at 71 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). *See also Fernandez v. Montgomery*, 182 F. Supp. 3d 991, 1011 (N.D. Cal. 2016) (No clearly established federal law "prohibits a trial court from instructing a jury with a factually inapplicable but accurate statement of state law."); *Acajabon v. Espinoza*, No. 116CV00183MJSHC, 2017 WL 5608070, at *13 (E.D. Cal. Nov. 21, 2017).

Accordingly, the factually invalid theft by larceny instruction does not rise to the level of a federal constitutional claim.

### 2. Prejudice

Even if the harmlessness decision were objectively unreasonable and were an error of federal law that this Court could address, habeas petitioners are not entitled to relief unless they can show the error resulted in "actual prejudice," i.e. that it had a "substantial and injurious" effect on the jury's verdict. *Brecht*, 507 U.S. at 637-38; *see also Frye*, 551 U.S. at 120 ("in § 2254 habeas proceedings a federal court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and

injurious effect' standard set forth in *Brecht* whether or not the state appellate court recognized the error and reviewed it under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman*.").

Here, Petitioner would not be entitled to relief even if the erroneous theft by larceny instruction were objectively unreasonable and reviewable by this Court because the instruction did not have a substantial and injurious effect on the jury's verdict. *See Brecht*, 507 U.S. at 637-38. The evidence clearly supported the conclusion that Petitioner was guilty of theft by false pretenses. *See* Lodgment No. 1, Dkt. No. 7-1 at 1-3. The neighbor testified that Petitioner told him he could order items online, claim they were not delivered, and get a replacement or refund. *Id.* at 1. The purpose of this was to get one's money back and keep the item without paying for it. Lodgment No. 7, vol. 3, Dkt. No. 7-9 at 26-27. The victim testified that he had an extensive conversation with Schroeder, charged a card given to him by Schroeder, and shipped the silver to Schroeder. Lodgment No. 1, Dkt. No. 7-1 at 1-2. The FedEx delivery person testified that he delivered the silver to Schroder's apartment and that Petitioner claimed he was Schroeder and signed for the package. *Id.* at 2. Although Petitioner testified that he was in Los Angeles the weekend the package was delivered, the prosecution presented cellphone evidence that placed Petitioner's cellphone in the San Diego area that weekend. *Id.* at 2-3.

Moreover, even if the theft by larceny instruction were erroneous, it did not by itself affect the entire trial such that due process was violated. The theft by larceny instruction required the jury to find the defendant took the property without the owner's consent, while the theft by false pretenses instruction required the jury to find that the owner gave the property to the defendant while relying on a false representation made by the defendant. *Id.* at 5. The jury was also instructed that in order to convict, they were required to find that the prosecution had proven every element of the offenses beyond a reasonable doubt. Lodgment No. 14, Dkt. No. 7-14 at 58. The evidence presented at trial

established that the victim consensually transferred title to the silver to Schroeder under the false belief that Schroeder would pay for it and not that Petitioner took it without the victim's consent. *See* Lodgment No. 1, Dkt. No. 7-1 at 1-3. The jury was "well-equipped" to assess the facts presented at trial and conclude that that the larceny instruction was not applicable. *See Griffin*, 502 U.S. at 60. Thus, considering the instructions as a whole, this Court is not in "grave doubt" about the effect of any error on Petitioner's trial. *See O'Neal*, 513 U.S. at 445.

## IV.     CERTIFICATE OF APPEALABILITY

Under Rule 11 of the Federal Rules Governing section 2254 cases, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If this Court does not issue a certificate of appealability, this decision may not be appealed, 28 U.S.C. § 2253(c)(1)(A), and this Court may not issue a certificate of appealability unless Petitioner makes a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(1)(B)(2). To prove a substantial showing of denial of a constitutional right, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDonald*, 529 U.S. 473, 484 (2000).

Here, Petitioner does not make a substantial showing of the denial of a constitutional right, and it is unlikely that reasonable jurists would find this Court's assessment debatable or wrong. Therefore, this Court **DENIES** a certificate of appealability.

## CONCLUSION

For the foregoing reasons, this Court **ADOPTS** the Magistrate Judge's Report and Recommendation, **DENIES** Petitioner's Habeas Petition, **OVERRULES** Petitioner's Objections, and **DENIES** a Certificate of Appealability.

**IT IS SO ORDERED.**

3:17-cv-00861-GPC-KSC

Dated:  June 27, 2018

Hon. Gonzalo P. Curiel
United States District Judge